# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JAMES FRANKLIN and wife, | § | |
| MELISSA FRANKLIN | § | |
|     Plaintiffs, | § | |
| | § | |
| VS. | § | Case No. 4:11CV572 |
| | § | |
| PNC BANK NATIONAL ASSOCIATION | § | |
| d/b/a PNC MORTGAGE and FEDERAL | § | |
| HOME LOAN MORTGAGE | § | |
| CORPORATION | § | |
|     Defendants. | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Now before the Court is Defendant PNC Bank and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment (Dkt. 36). As set forth below, the Court finds that the motion should be GRANTED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about January 7, 2005, Plaintiffs James Franklin and Melissa Franklin executed a promissory Note payable to National City Bank of Indiana and a Deed of Trust to secure the payment of the Note regarding real property located at 11937 Keystone Drive, Frisco, Texas 75034 ("the Property"). The Note was subsequently assigned to Defendant PNC. After facing apparent financial hardship sometime in 2008, Plaintiffs contacted PNC about a loan modification or forbearance. According to Plaintiffs' complaint, they then engaged in loan modification negotiations with Defendant over a period of months, making some payments under a modification plan. Then,

1

according to Plaintiffs, PNC denied their loan modification in March 2010, Plaintiffs again engaged in loan modification negotiations with PNC, and they were advised on July 1, 2011 that they were eligible for one. Nonetheless, on July 5, 2011, the Property was sold at a foreclosure sale to Defendant Freddie Mac.

After the Property was sold, Plaintiffs filed suit in state court in August 2011. On September 6, 2011, the matter was removed to this Court. After removal, Plaintiffs amended their complaint to assert the following causes of action against Defendants PNC and Freddie Mac: (1) breach of contract and anticipatory breach of contract; (2) breach of common law tort of unreasonable collection efforts; (3) violation of Texas Consumer Credit Code/Debt Collection Practices Act; (4) negligent misrepresentation/gross negligence; and (5) suit to quiet title and trespass to try title. *See* Dkt. 12. Plaintiffs' complaint also seeks declaratory judgment, exemplary damages, (alleging that Defendants acted with malice), and an accounting of all transactions on their mortgage loan. *Id.*

On September 28, 2012, after consideration of Defendant PNC's motion to dismiss, the Court dismissed Plaintiffs' claims of breach of contract based on waiver, anticipatory breach, breach of duty of good faith and fair dealing and breach of oral loan modification. Remaining in the suit are: (1) Plaintiffs' claims of breach of contract regarding failure to comply with certain statutory procedural obligations embodied in the parties' Deed of Trust; (2) Plaintiffs' claim of breach of common law tort of unreasonable collection efforts; (3) Plaintiffs' claim of violation of Texas Consumer Credit Code/Debt Collection Practices Act; (4) Plaintiffs' negligent misrepresentation/gross negligence claims; (5) Plaintiffs' suit to quiet title and trespass to try title;

and (6) Plaintiffs' request for declaratory judgment, exemplary damages, (alleging that Defendants acted with malice), and an accounting of all transactions on their mortgage loan.

The Court will now address Defendants' motion for summary judgment as to those remaining claims.

## STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie,* 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of

evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant's response "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

### ANALYSIS

In support of their motion, Defendants submit the following summary judgment evidence: Exh. A Affidavit of Timothy Justice

> Exh. A(1) Comptroller of Currency 7/21/06 Letter
> Exh. A(2) Comptroller of Currency 10/27/09 Letter
> Exh. A(3) Certificate of Merger
> Exh. A(4) Note
> Exh. A(5) Deed of Trust
> Exh. A(6) Payment History for the Loan

Exh. A(7) Text of Letters to Franklins Acknowledging Modification Requests and Requesting Additional Documents

Exh. A(8) Text of Certain Letters to Franklins Denying Loan Modification

Exh. A(9) Signed HAMP trial period plan dated 11/9/2009

Exh. A(10) Unsigned HAMP modification agreement dated 6/22/2010

Exh. A(11) Text of Letters to Franklins regarding Notice of Default, Opportunity to Cure, and Referral to Foreclosure

Exh. A(12) Payoff Statement through October 2012

Exh. A(13) Notice of Appointment of Substitute Trustee, Acceleration and Notice of Foreclosure Sale

*See* Dkt. 36-1 – 36-14.

In response, Plaintiffs submit the following summary judgment evidence:

A Affidavit of James Franklin

A1 Note

A2 Deed of Trust

A3 Escrow Waiver

A4 Affidavit Authorizing Payment of Taxes and Transfer of Tax Lien

A5 June 15, 2009 Notice of Acceleration and Notice of Substitute Trustee's Deed

A6 Escrow Account Disclosure Statement

A7 June 22, 2010 Letter from PNC regarding the HAMP Modification Agreement

A8 HAMP Agreement and corresponding required documents for modification

A9 Plaintiffs' June 12, 2011 hardship letter and loan modification application

A10 July 1, 2011 email from Lisa Krevo to Plaintiffs

A11 July 1, 2011 email with attachments from Plaintiffs to Lisa Krevo

A12 July 11, 2011 eviction notice

A13 July 20, 2011 email from Plaintiffs to Monica Lane at Freddie Mac

A14 Substitute Trustee's Deed

A-15 November 1, 2009 HAMP Trial Period Agreement

A16 Attorneys Fees Statement and Contract

B Defendants' documents produced through Initial Disclosures

*See* Dkt. 64-1 – 64-2.

## ANALYSIS

### Plaintiffs' Breach of Contract Claims & Suit to Quiet Title and Trespass to Try Title

Plaintiffs allege that Defendants breached the Deed of Trust, violating Texas Property Code § 51.002, by not giving Plaintiffs the right to cure and reinstate their Note and selling the Property at a foreclosure sale nonetheless. The Court has previously found that allegations regarding any failures to comply with certain statutory procedural obligations embodied in a Deed of Trust were sufficient to state a breach of contract claim.[1]

In response to Plaintiffs' claim that Defendants never gave them the right to cure and reinstate their Note, Defendants claim that the summary judgment evidence shows that PNC timely provided Plaintiffs with all required notices. Defendants offer: (1) a November 14, 2008 letter to Plaintiff James Franklin from National City Mortgage, notifying Plaintiff of the delinquency on his loan; (2) a December 2, 2008 letter to James Franklin from National City Mortgage regarding the

---

[1] The Court has already found that, as to any breach of contract claims based on the alleged modification agreement, Plaintiffs cannot state a claim a breach of contract claim. Therefore, the Court declines to consider Plaintiffs' summary judgment arguments based on the alleged modification agreement.

failure to pay monthly payments on the loan for 11937 Keystone Drive in Frisco;[2] (3) a January 12, 2009 letter to James Franklin from National City Mortgage regarding Plaintiff's options to stop foreclosure;[3] and (4) a February 2, 2009 letter to James Franklin regarding modification of National City Mortgage loan modification process. *See* Dkt. 36-12. Defendants also attach a June 13, 2011 Notice of Acceleration and Letters Enclosing Notice of Substitute Trustee's Sale directed to both James and Melissa Franklin regarding the property located at 11937 Keystone Drive, Frisco, Texas. *See* Dkt. 36-14. Defendants also include the Affidavit of Timothy Justice, a Mortgage Officer with PNC Mortgage, stating that Plaintiffs were provided all of the letter notices at the most current address PNC had for them. *See* Dkt. 36-1 at ¶18.

In response to this summary judgment evidence, Plaintiffs argue that, "[e]ven if Defendants complied with the requirements of the Deed of Trust, which Plaintiffs do not agree that they did, Plaintiffs were still not given the opportunity to cure or reinstate their note." Dkt. 64 at 12. Plaintiffs argue that "[t]he notices were withdrawn by Defendant because Plaintiffs were offered, and accepted, to refinance their loan." *Id.* In support of this contention, Plaintiffs cite generally to James Franklin's six-page affidavit, which is notably silent as to whether he received any of the notices or letters offered by Defendants in their summary judgment evidence. *See* Dkt. 64-1 at 1-6.

---

[2]This letter contains the following language: "Failure to cure the breach or default by said date, will result in the acceleration of the maturity date of the Note, in the declaration that all sums that secured by the Deed of Trust are immediately due and payable, and in this matter being referred to our attorney for whatever action is deemed appropriate....After acceleration you may still have the right to reinstate by paying all amounts due...." Dkt. 36-12 at 3-4.

[3]The letter contains the following language: "Please note that all foreclosure activity will continue until a mortgage workout program is approved." Dkt. 36-12 at 5.

Plaintiffs also cite to documents produced by Defendants in discovery which appear to be Defendants' electronic records regarding activity on Plaintiffs' loan account. *See* Dkt. 64-2 at 3-4. Plaintiffs do not argue or show how these records support their contention that Defendants failed to comply with their notice obligations under the Deed of Trust. Finally, Plaintiffs cite to the Home Affordable Modification Trial Period Plan signed by James Franklin (but not Defendants) on October 26, 2009. Dkt. 64-1 at 83-86. Plaintiffs have not shown how this evidence would create a fact issue as to their remaining breach of contract claim or assertion that Defendants withdrew their initial notices. Indeed, the loan modification plan offered by Plaintiffs as summary judgment evidence states "any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law." Dkt. 64-1 at 84, §2(B). Rather than create a fact issue as to Plaintiffs' allegations regarding the purported withdrawal of notices, this summary judgment evidence supports Defendants' position that no new notices were required. The Court agrees, and without any citation to governing case law that would show that a loan modification – as a matter of law – requires the re-issuance of notice to a defaulting home owner, Plaintiffs have not shown how their breach of contract claims can survive. As to the other summary judgment evidence cited by Plaintiffs – portions of Franklin's affidavit regarding the postponement of the foreclosure sale and submission of fax materials to PNC (*see* Dkt. 64-1 at 4), an email forwarding Plaintiffs' tax returns (*see* Dkt. 64-

1 at 77), and the documentation regarding the sale of Plaintiffs' Property at a foreclosure sale (*see* Dkt. 64- 1 at 76-82) – the Court finds that it does not create a genuine issue of material fact as to whether Plaintiffs were given the right to cure and reinstate their Note.

Plaintiffs have not sustained their burden in identifying evidence in the summary judgment record that would create a genuine issue of material fact as to their breach of contract claims, and, although it is not their burden to do so, Defendants have offered summary judgment evidence that shows the notice provided to Plaintiffs as to the default on their loan. Summary judgment should be GRANTED for Defendants as to Plaintiffs' remaining breach of contract claim.

Plaintiffs have also alleged in this suit that they have superior title because the trustee's sale was void because Defendants did not comply with the Texas Property Code. Dkt. 12 at ¶¶ 42-43. Because Plaintiffs have failed to create a genuine issue of material fact as to their claim that Defendants did not comply with the Texas Property Code, they cannot create a genuine issue of material fact as to their claim of superior title to the Property. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) ("To prevail in a trespass-to-try-title action, Plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned."). Summary judgment should also be GRANTED for Defendants as to Plaintiffs' claims for suit to quiet title and trespass to try title.

**Unreasonable Collection Efforts**

Next, the Court turns to Plaintiffs' claims of the breach of common law tort of unreasonable collection efforts. As has been made clear by the Fifth Circuit, the standard for claims of unreasonable collection efforts under Texas law requires a showing of "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n*, 2013 WL 363118, 2 (5th Cir. 2013) (citing *EMC Mortg. Corp. v. Jones,* 252 S.W.3d 857, 868 (Tex. App.– Dallas 2008) (noting that "[t]his is the standard for claims of unreasonable collection efforts."). As one court has noted, "[u]nreasonable collection efforts is a Texas common-law intentional tort that lacks clearly defined elements." *B.F. Jackson, Inc. v. Costar Realty Info., Inc.*, 2009 WL 1812922, at *5 (S.D. Tex. 2009). The reasonableness of conduct is judged on a case-by-case basis. *Id.* (*citing Woodrum v. Bradley*, 1990 WL 151264, at *4 (Tex. App.-Houston [14th Dist.] 1990, writ denied). Generally, "mental anguish damages alone will not establish a right of recovery; the plaintiff must suffer some physical or other actual damages in order to be entitled to relief." *Id.*

Here, Plaintiffs allege that Defendants "made several requests for additional information," "began intentionally misleading and delaying Plaintiffs to the point of foreclosure by informing Plaintiffs that their loan modification was in review impeding Plaintiffs' performance of the loan modification agreement, while all along, continuing to assess late charges and penalties, improperly foreclosing on the property, and imposing numerous additional charges upon Plaintiffs' mortgage loan account," and "slandered Plaintiffs' credit reputation, defamed their credit and exposed them

to ridicule in the community." Dkt. 12 at ¶26.

Defendants argue that there is no evidence that would create a fact issue as to Plaintiffs' claims of unreasonable collection efforts. The Court agrees.

Although Plaintiffs generally cite to the affidavit of James Franklin (*see* Dkt. 64-1 at 1-6), they do not specifically cite to any portion of the affidavit that would show a course of harassment and it is simply not enough to create a fact issue. *See Smith v. JPMorgan Chase Bank, N.A.*, 2013 WL 1165218, 2 (5th Cir. 2013) (affirming district court's finding that the plaintiffs' "self-serving and uncorroborated statement that 'Defendants' agents made harassing phone calls 8–10 times per day...'" was not enough to raise a genuine issue of material fact as to the plaintiffs' unreasonable collection effort claim.). Plaintiffs also cite to the loan modification agreement and Defendant's records as to Plaintiffs' apparent payments under the loan modification (*see* Dkt. 64-1 at 99-102 and 64-1 at 3-4) to argue that Defendants told them not to make any more payments and to wait on the decision of the loan modification. Even viewing this evidence in the light most favorable to Plaintiffs, it does not create a fact issue as to any wanton or malicious conduct by Defendants. *Sanghera v. Wells Fargo Bank, N.A.*, 2012 WL 555155, 7 (N.D. Tex. 2012) (granting summary judgment for the defendants on the plaintiffs' unreasonable collection efforts claim and noting that "the Court is unaware of—and Plaintiffs have provided no authority—as to how promising not to foreclose on a property, can, without more, be considered willful, wanton, or malicious harassment."). Without any evidence to create a fact issue, summary judgment should be GRANTED for Defendants as to Plaintiffs' claim of unreasonable collection efforts. *See Milton v.*

*U.S. Bank Nat. Ass'n*, 2013 WL 264561, 3 (5th Cir. 2013) (finding that a plaintiff's unreasonable collection efforts claims were not supported by evidence sufficient to survive summary judgment because summary judgment record was devoid of any evidence, apart from the plaintiff's unsupported speculation, that the purported misrepresentations or were 'willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'").

Now the Court turns to Plaintiffs' claims which were not subject of Defendants' motion to dismiss.

## Violation of Texas Consumer Credit Code/Debt Collection Practices Act

In their complaint, Plaintiffs allege that Defendants violated §§ 392.301(a)(8), 392.303(a)(2), 392.304(a)(8), and 392.304(a)(19) of the Texas Finance Code, all portions of the Texas Debt Collection Practices Act.[4]  *See* Dkt. 12 at 12-14.  The Court finds that Plaintiffs have failed to demonstrate a genuine issue of material fact as to any of these claims.

Section 392.301(a)(8) prohibits threatening to take an action prohibited by law.  Plaintiffs argue that Defendants violated this section by foreclosing on the Property without complying with the terms of the Deed of Trust and further "coerced Plaintiffs into not taking any action to prevent the foreclosure sale by telling them not to make anymore payments until the loan modification was

---

[4]The Court's findings herein presume that Defendants' actions fall within the scope of "debt collection" as contemplated under the Texas statute. *See Biggers v. BAC Home Loans Serv., LP*, 767 F. Supp.2d 725, 731 (N.D. Tex. 2011) ("The Texas Supreme Court has not yet addressed whether the act of foreclosure is a 'debt collection' under the TDCPA. Intermediate Texas appellate courts have decided cases involving foreclosure-related claims under the TDCPA without suggesting that foreclosures do not qualify as 'debt collection.'  And intermediate Texas courts have held that acts related to foreclosing on real property can violate the TDCPA.").

complete and that they would not foreclose during the loan modification process." Dkt 64 at 16. Plaintiffs again cite to the affidavit of James Franklin to support this proposition. Not only does Section 392.301(b)(3) specifically exclude the exercising of a "statutory or contractual right of seizure, repossession or sale that does not require court proceedings" from its provisions, *see* TEX. FIN. CODE § 392.301(b)(3), the Court has already found no found fact issue as to Plaintiffs' allegation that Defendants failed to comply with the Deed of Trust. And Plaintiffs have cited to no authority to support their claim that Defendants' actions regarding the attempted loan modification, even if true, were prohibited by law. Without any evidence of a threat by Defendants, Plaintiffs' claims under 392.301(a)(8) fail and summary judgment should be GRANTED for Defendants as to that claim.

Next, the Court turns to Section 392.303(a)(2) of the Texas Finance Code which prohibits a debt collector from collecting or attempting to collect interest or charges not authorized by the Note, Deed of Trust or applicable law. As to this claim, Plaintiffs argue that Defendants violated this provision by assessing late fees when Plaintiffs were making payments under the trial payment loan modification plan. While Plaintiffs cite to Defendants' records of their account history to argue that they were charged late fees, they do not specifically cite to what late fees were charged and how they were unauthorized. *See* Dkt. 64-2 at 3-4. It is not the Court's job to scour the record to decipher the fact issue alleged, and, although the Court has attempted to determine what late fees were charged, none are apparent such that the Court could find a fact issue. Defendants themselves cite to charges for attorneys' fees noted in the record, but note that the trial payment plan governing

the modification provides that "all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents." Dkt. 64-1 at 86. In response to this argument, Plaintiffs have failed to cite to any evidence that would create a fact issue that they were charged unauthorized fees not authorized by the mortgage documents or applicable law. The Court will not – and indeed is not required to – scour the record in this matter to determine whether Plaintiffs could create a genuine issue of material fact as to their allegations regarding Subsection 392.303(a)(2). *See* E.D. TEX. L. R. CV-56(d). Therefore, they have failed to sustain their summary judgment burden. Summary judgment should be GRANTED for Defendants as to Plaintiffs' claims under 392.303(a)(2).

The Court turns to Plaintiffs' claims under Sections 392.304(a)(8) and 392.304(a)(19). Section 392.304(a)(8) of the Texas Finance Code prohibits misrepresenting the character, extent or amount of consumer debt, and Section 392.304(a)(19) prohibits the use of false representations or deceptive means to collect a debt or obtain information concerning a consumer. Here, Plaintiffs allege that Defendants informed Plaintiffs that the loan was being modified and foreclosure was being postponed while Defendants proceeded with foreclosure on the Property. As to their claims under both of these subsections, Plaintiffs cite again to James Franklin's affidavit and Defendants' electronic records regarding Plaintiffs' loan account. Plaintiffs also cite to the Substitute Trustee's Deed posting the Property for foreclosure. *See* Dkt. 64-1 at 76.

Although "[a] collection notice or balance statement misstating the amount owed on a debt constitutes a misleading assertion regarding the amount of that debt under the TDCA," *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp.2d 621, 632 -633 (N.D. Tex. 2010), Plaintiffs have not cited to any evidence of a balance statement issued to them by Defendants which misstates the amount owed on their loan. Plaintiffs have cited to no authority that would show that the attempts to modify the loan constitute a misstatement of the amount owed on the Note under the TDCA. And that the modification ultimately was not approved is insufficient summary judgment evidence to create a fact issue regarding any alleged false representation regarding Plaintiffs' loan. Without summary judgment evidence in the record creating a fact issue as to any misrepresentations or deceptive actions about the amount owed, summary judgment should be GRANTED for Defendants as to Plaintiffs' claims under Sections 392.304(a)(8) and 392.304(a)(19).

## Negligent Misrepresentation/Gross Negligence

The Court next turns to Plaintiffs' claims of negligent misrepresentation and gross negligence against Defendants. Under Texas law, a claimant alleging negligent misrepresentation must show the following: (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation. *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 734 (N.D. Tex. 2011) (quoting *Sloane*, 825 S.W.2d at 442)

(internal quotations omitted). Of critical importance here is that, in order to prevail on a claim of negligent misrepresentation in Texas, the misrepresentation at issue must be one of existing fact because "under Texas law, promises of future action are not actionable as a negligent-misrepresentation tort." *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 205, 2012 WL 1758597, 3 (5th Cir. 2012) (citing *Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.-Amarillo 2007, no pet.)). In particular, "representations regarding future loan modifications and foreclosure constitute promises of future action rather than representations of existing fact" and will not support a misrepresentation claim. *Thomas v. EMC Mortg. Corp.*, 2012 WL 5984943, 3 (5th Cir. 2012) (citing *Scherer v. Angell,* 253 S.W.3d 777, 781 (Tex. App. – Amarillo 2007, no pet.)).

In this case, Plaintiffs argue that summary judgment evidence creates a fact issue as to four misrepresentations by Defendants as follows:

> After Plaintiffs successfully made their third trial payment, a PNC representative told Plaintiffs not to make any more payments and to wait for the final decision on the loan modification.

> After Plaintiffs received notice that their loan modification was denied in March 2010, Heather Hammond, a PNC representative told Plaintiffs that PNC made an error in the calculations because PNC forgot to include Plaintiffs' taxes and insurance and that Plaintiffs would have to start the process over again.

> In March 2011, Plaintiffs received a call from Home Solutions, stating that Freddie Mac was requesting that Plaintiffs pay $7,500 as a down payment on the loan modification, but refused to tell Plaintiffs what the monthly payment would be under the modification. Home Solutions told Plaintiffs they could make a counteroffer of the amount of the down payment and then find out their proposed monthly mortgage payment. Plaintiffs made a down payment offer, but never heard back about the modification.

On July 1, 2011 Plaintiffs spoke to Lisa Krevo, an employee of PNC, who told Plaintiffs they were eligible for a loan modification and that Mr. Gaston, another PNC employee, had already sent an email to Freddie Mac to postpone the foreclosure sale.

Dkt. 64 at 18-19.

Plaintiffs cite primarily to the affidavit of James Franklin to support their allegations and again cite to (without identifying any specific portion) Defendants' computerized account records for Plaintiffs' mortgage loan. Assuming that Plaintiff's affidavit is sufficient evidence to support the allegations,[5] the Court finds that the first two alleged misrepresentations – on their face – fail to create a fact issue regarding negligent misrepresentation, because, even if they are true, Plaintiffs have not alleged any false information provided by Defendants, an essential element of such a claim. *See Biggers*, 767 F. Supp. 2d at 734. As to the third alleged misrepresentation, it pertains to an alleged representation made by a non-party, Home Solutions,[6] that Plaintiffs could make a counteroffer of the amount of the down payment and find out their proposed monthly mortgage payment. Even assuming Defendants could be held liable for such representation made by a third

----

[5]*See Sanchez v. Dallas/Fort Worth Intern. Airport Bd.*, 2011 WL 3667435, 3 (5th Cir. 2011) ("a self-serving affidavit, without more evidence, will not defeat summary judgment.") (citing *DIRECTV, Inc. v. Budden,* 420 F.3d 521, 531 & n. 49 (5th Cir. 2005)); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (affirming summary judgment for plaintiffs where "the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant"); *see also United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (affirming summary judgment for plaintiff where defendant's only evidence consisted of "self-serving allegations," which "are not the type of significant probative evidence required to defeat summary judgment" (internal quotation marks and citation omitted)).

[6]In their summary judgment response, Plaintiffs identify Home Solutions as "an affiliate of PNC and Freddie Mac"

party, in the Fifth Circuit, "representations regarding future loan modifications and foreclosure constitute promises of future action rather than representations of existing fact" and will not support a claim for negligent misrepresentation. *Thomas v. EMC Mortg. Corp.*, 2012 WL 5984943, 3 (5th Cir. 2012) (citing *Scherer v. Angell,* 253 S.W.3d 777, 781 (Tex. App. – Amarillo 2007, no pet.)). *See also Milton v. U.S. Bank Nat. Ass'n*, 2013 WL 264561, 2 (5th Cir. 2013) (plaintiff did not state viable negligent misrepresentation claim based on promise that mortgage servicer would not foreclose during loan modification because it was promise of future conduct); *Fankhauser v. Fannie Mae*, 2011 WL 1630193, at *7 (E.D. Tex. 2011). Therefore, as to the first three of the four alleged misrepresentations, summary judgment should be GRANTED for Defendants.

As to the final misrepresentation – that a "PNC employee, had already sent an email to Freddie Mac to postpone the foreclosure sale" – the Court finds that, unlike the other statements, if true, it would be a misrepresentation of existing fact and could be enough to survive summary judgment.

However, the Court finds that Plaintiffs have not offered sufficient evidence of any damages separate and apart from the parties' mortgage agreement such that the economic loss doctrine would not bar their claims. The economic loss doctrine has been applied consistently to bar claims for negligence and other tort claims when the parties' relationship and its attendant duties arise from a contract. *See Southwestern Bell Tel. Co. v. Delanney* 809 S.W.2d 493, 494-95 (Tex. 1991) ("if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract," and affirming dismissal of negligence claims

based on breach of contractual duty); *see also Hugh Symons Group v. Motorola, Inc.,* 292 F.3d 466, 470 (5th Cir. 2002) (citing *Haase v. Glazner,* 62 S.W.3d 795, 799 (Tex. 2002)) (a plaintiff generally "may not recover in tort for claims arising out of an unenforceable contract under the statute of frauds."). Thus, "if the defendant's conduct ... would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claims may also sound in tort." *Southwestern Bell Tel. Co.,* 809 S.W.2d at 494. If, however, "the defendant's conduct ... would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim sounds only in contract." *Id.* In order to recover for a claim of negligent misrepresentation, a plaintiff must show an injury independent from the subject matter of the contract. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663–64 (Tex. 1998) (per curiam); *see also Narvaez v. Wilshire Credit Corp.*, 757 F. Supp.2d 621, 634 (N.D. Tex. 2010).

Here, the only evidence of Plaintiffs' alleged damages is a single paragraph in Plaintiff James Franklin's affidavit claiming:

> I have spent numerous hours speaking to PNC's representatives and its attorneys, calling and writing, gathering and sending them requested documentation. Prior to filing suit, I estimate that I have spent approximately 112 hours trying to do this. My employer pays me $48.00 per hour, so in my opinion, the value of my time is approximately $48.00 per hour. Additionally, I was unable to secure a job at a bank due to PNC's derogatory credit reporting and have suffered a loss of income in the amount of $70,000. My wife and I have also incurred over $18,244.57 in attorney fees.

Dkt. 64-1 at 5.

The Court finds that this is not sufficient summary judgment evidence to create a fact issue as to damages. Primarily, Plaintiffs' alleged "injuries are in no way independent of the subject

matter of the deed of trust or note" and the parties' relationship thereunder. *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp.2d 621, 634 (N.D. Tex. 2010). Indeed, but for the obligations under and relationship created under the Deed of Trust and Note, Plaintiff James Franklin would not have spent the time he purportedly did corresponding about his mortgage payments, nor would his credit have been affected by the foreclosure.

Moreover, even if the alleged damages could be construed as independent from the mortgage documents, there is insufficient evidence or case law that would support negligent misrepresentation damages. Again, the only evidence of Plaintiffs' damages is the self-serving statement of Plaintiff James Franklin. No evidence whatsoever supports any allegation of damages to Plaintiff Melissa Franklin. And, as to the allegation James Franklin's lost job opportunity, time, and damaged credit, Plaintiffs have not offered any other evidence other than a conclusory statement. This is not enough to create a fact issue. *Sanghera v. Wells Fargo Bank, N.A.*, 2012 WL 555155, 6 (N.D. Tex. 2012) (finding negligent misrepresentation claim barred by economic loss rule where "other than Jagdeep's self-serving affidavit, Plaintiffs have pointed to no evidence that their credit ratings have been damaged" and because "Plaintiffs' alleged loss of title and creditworthiness are economic damages that arise directly from the alleged breach of this contractual relationship.").[7] As to any claim for

---

[7] *See also Pennington v. HSBC Bank USA, N.A.*, 493 Fed. Appx. 548, 556 (5th Cir. 2012) (affirming finding that plaintiffs asserting negligent misrepresentation claim could not state such a claim by alleging that they were damaged as a result of fees and interest charged as a result of modified payments.) ("If they truly were unable to make the payments, they still would have fallen behind, accrued interest, suffered late charges, and owed addition payments on that interest. If the plaintiffs were able to make all their payments as they came due, they would have been ineligible for the HAMP program for lacking the requisite hardship and would have been rejected from Step Two—landing them in the same predicament they face now. Accrual of

attorneys' fees, they are not recoverable for negligence claims under Texas law. *Id.* (citing *Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 568 (Tex. 2002)). Therefore, as to the final alleged misrepresentation, Plaintiffs have not offered sufficient summary judgment evidence that would create a fact issue as to their claim such that the economic loss rule can be avoided and summary judgment should be GRANTED on that basis.

As to the claim of gross negligence, "[t]he threshold inquiry regarding a gross negligence claim is whether a legal duty existed." *RT Realty, L.P. v. Tex. Utils. Elec. Co.*, 181 S.W.3d 905, 914 (Tex. App. – Dallas 2006, no pet.) (citing *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999)). Plaintiffs' claims of gross negligence (which were not addressed in the motion to dismiss) fail because "under Texas law, there is no special relationship between a mortgagor and mortgagee that would give rise to a stand-alone duty of good faith and fair dealing" to support such a claim. *Milton v. U.S. Bank Nat. Ass'n*, 2013 WL 264561, 3 (5th Cir. 2013) (internal citations omitted). Summary judgment should be GRANTED for Defendants as to Plaintiffs' negligence and gross negligence claims.

**Declaratory Judgment and Accounting**

Because Plaintiffs have failed to demonstrate any fact issues entitling them to any relief, they are not entitled to an accounting or declaratory judgment. *See Animale Group Inc. v. Sunny's Perfume Inc.*, 256 Fed. Appx. 707, 709 (5th Cir. 2007) (accounting is generally an equitable remedy) (citing *Maltina Corp. v. Cawy Bottling Co.,* 613 F.2d 582, 584-85 (5th Cir.1980)); *California Prods.,*

---

unpaid interest was a foregone conclusion, not a result of negligent misrepresentation.").

*Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780, 781 (Tex. 1960) ("there must be a justiciable controversy between the parties before a declaratory judgment action will lie.").

Having reviewed the summary judgment record before it, and for the reasons set forth herein, the Court finds that Defendant PNC Bank and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment (Dkt. 36) should be GRANTED in its entirety for Defendants, that Plaintiffs shall take nothing by their claims, and that this matter should be closed on the Court's docket.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to timely file written objections to the proposed findings and recommendations contained in this report shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 1st day of May, 2013.**


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE